[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This petition for a writ of habeas corpus. The petitioner, Lindsay Jones, alleges illegal confinement based on a claim of ineffective assistance of counsel at the time of trial.
The petitioner was arrested on February 18, 1992, charged with five counts of possession of narcotics with intent to sell in violation of General Statutes, Section 21a-277(a). On January 15, 1993 after trial, the petitioner was convicted on all five counts. On March 3, 1993, the petitioner was sentenced to a term CT Page 11091 of four years and fined $5,000.00, on each count, the sentences to run consecutively, for a total effective sentence of twenty years imprisonment and a total fine of $25,000.00.
Petitioner filed his petition for writ of habeas corpus dated July 9, 1996. His amended petition was filed February 7, 1997. Respondent's Return was filed December 15, 1997 wherein the allegations of ineffective assistance of counsel were denied and a claim was made that petitioner had deliberately bypassed the orderly process of appeal. The latter claim was subsequently withdrawn. A hearing on the merits opened on January 9, 1998, continued on April 9th and closing arguments were heard on June 8, 1998.
 II
In the period 1991-92 the petitioner operated a parking garage and car wash in the city of Danbury. On several occasions during the period of October, 1991-January, 1992, members of the Danbury police department sent "corroborating witnesses" into said garage to make narcotics purchases. These informants identified the petitioner as having sold narcotics to them and so testified at trial.
The petitioner, in alleging ineffective assistance of counsel, claims specifically that trial counsel:
— failed to interview and call as witnesses four individuals whom petitioner wished to call; Calvin Brown, Aaron Dickerson, David Watson, a.k.a. Wlliam Earl, and Virginia Anderson, now Virginia Jones;
— failed to interview and impeach at time of trial the state's witnesses, Gerry Redfern, John Cimino and Frank Cooper;
— failed to obtain and enter into evidence a diagram of the garage layout that petitioner believes would have been exculpatory;
— gave the petitioner incorrect and incomplete advice, as a result of which the petitioner elected to go to trial on the said charges.
 III
"In order for a criminal defendant to prevail on a CT Page 11092 constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice. Phillips v. Warden, 220 Conn. 112, 132, 595 A.2d 1356
(1991). Thus, he must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, `that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' Stricklandv. Washington, 406 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674
reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864
(1984). In this context a `reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' does not require the petitioner to show that `counsel's deficient conduct more likely than not altered the outcome in the case,' Id. 683. Rather, it merely requires the petitioner to establish `a probability sufficient to undermine confidence in the outcome,'" Id., 694, Bunkley v.Commissioner of Correction, 222 Conn. 444, 445-6.
For reasons stated below, applying the Strickland standards, the court concludes that the petitioner has fallen far short of meeting his burden of persuasion.
 IV
Regarding the claim that trial counsel failed to call four individuals as "vital" witnesses for the defense; the petitioner testified at the habeas hearing that the four were frequently on the premises of the garage and knew he didn't sell drugs. Watson was in the garage every day "and knew I didn't sell . . . no cocaine." Dickerson "Because he was in the garage — They claimed that he bought drugs from me. But he got the drugs out of his car." Virginia Anderson Jones: "Because she knew I wasn't selling drugs." Calvin Brown was a man whom the petitioner allowed to sleep in the garage.
Neither Watson, Dickerson nor Brown testified at the habeas hearing. Consequently, what each might have testified to at trial remains a matter of conjecture and the court has no basis on which to conclude that the testimony of any of them would have been exculpatory to the petitioner at trial. Apart, possibly, from the claim that on one occasion Dickerson was arrested for buying drugs from the petitioner, none of these individuals were shown, nor even alleged to have been present on the premises on the specific dates when the transactions which CT Page 11093 led to the petitioner's convictions occurred.
Virginia Anderson Jones, now married to the petitioner, did testify at the habeas hearing. She testified she frequently saw Gerry Redfern, one of the corroborating witnesses against petitioner at trial, selling drugs from the garage premises. Mrs. Jones testified that she was "in and out" of the garage premises every day. She did not testify that she was present on the occasions when the transactions occurred which led to the petitioner's conviction.
Trial counsel, Steven Smart, testified at the habeas hearing. He stated that during trial, Aaron Dickerson came forward as a potential witness and was interviewed by Smart. Smart concluded that it would not be a good idea to put Dickerson on the stand; Dickerson was not coherent, did not make a good presentation and his proposed testimony that the petitioner "no longer" sold drugs did not appear helpful. Smart conceded that information from Virginia Jones that she had seen the informant, Redfern selling drugs, could have been helpful, but did not recall being told by her or anyone that she had important information.
The court concludes there is no reasonable probability that had Virginia Jones testified at the petitioner's trial the result of the proceeding would have been different.
Based on the evidence and testimony presented, the court finds that the petitioner has failed to establish, by a fair preponderance of the evidence that petitioner's trial counsel was ineffective by virtue of his failure to interview and call vital witnesses at the time of trial.
 V
The petitioner further alleges that trial counsel failed to gather impeachment material, exculpatory information and evidence for use during trial. Specifically, the petitioner claims a failure by trial counsel to obtain and seek to enter into evidence a diagram or layout of the garage where the drug transactions took place. Petitioner's habeas counsel stated in closing argument, "The purpose of the layout would have been to show a jury what else was in that garage, where the other cars were, where the other apartments were that would tend to support the testimony of these witnesses that he wanted, that other people kept narcotics there, other people lived there." CT Page 11094 Petitioner testified at the habeas hearing that his trial counsel neither asked him for a description, photograph nor diagram of the garage layout before (or during) trial. Trial counsel testified at the habeas hearing that at time of trial he didn't want to show "too much" about the petitioner's business, operating in a deteriorated, run-down building where drugs were sold; not a vital, on-going business; it was a "strategic decision" on Smart's part not to offer such a diagram. The court finds that the petitioner has failed to establish, by a fair preponderance of the evidence, that trial counsel's failure at time of trial to offer a photograph or sketch of the interior of the garage constituted ineffective assistance of counsel. The court is not persuaded that such failure constituted deficient performance by counsel nor that petitioner suffered actual prejudice by such failure. The court finds trial counsel's decision not to offer such information to be a rational decision, well within the range of competent representation.
The petitioner's claim that trial counsel failed to gather impeachment material focuses on trial counsel's alleged failure to interview and impeach the state's witnesses, Redfern, Cimino and Cooper. The trial transcript reflects that trial counsel Smart vigorously cross-examined each of these witnesses, questioned them on their past criminal records and competently sought to impeach their testimony. The court finds the petitioner's claims in this regard without merit. Smart's performance fell well within the range of effective trial representation.
Prior to trial, trial counsel engaged in plea negotiations on behalf of his client. In his amended petition, petitioner alleges that his decision to proceed to trial was based on advice from trial counsel that was incomplete and incorrect. At the habeas hearing, trial counsel testified he had advised the petitioner to accept the state's offer, believing there was a strong possibility petitioner would be convicted. The petitioner testified at the habeas hearing: "No, I didn't take nothing [re: plea offer] because I didn't do the crime." The court concludes that the petitioner's decision to go to trial was not the result of incomplete or incorrect advice from trial counsel, and that trial counsel's performance in giving advice on this issue did not constitute ineffective assistance of counsel.
 VI
CT Page 11095
Based on the evidence presented, the court concludes that the petitioner has failed to establish that the acts and omissions of trial counsel complained of by the petitioner, taken singly or as a whole, constituted ineffective assistance of counsel.
Accordingly, the relief requested is denied and petition is dismissed.
By the Court,
Downey, J.